1  Layne Friedrich (Bar No. 195431)
   LAWYERS FOR CLEAN WATER, INC.
2  1004 O'Reilly Avenue
   San Francisco, California 94129
3  Telephone: (415) 440-6520
   Facsimile: (415) 440-4155
4  Email: layne@lawyersforcleanwater.com

5

6  Attorneys for Plaintiff
   DELTAKEEPER, a chapter of
7  WATERKEEPERS NORTHERN CALIFORNIA[1]

8

9             UNITED STATES DISTRICT COURT

10            EASTERN DISTRICT OF CALIFORNIA

11

12  WATERKEEPERS NORTHERN CALIFORNIA, a        Civil Case No.: CIV. S-04-2647 KJM
    non-profit organization,
13
                                               **STIPULATED DISMISSAL and**
14          Plaintiff,                          **AMENDED CONSENT DECREE;**
                                               **ORDER**
15      v.

16  RUTH COLEMAN, in her official capacity as
    DIRECTOR of CALIFORNIA DEPARTMENT OF
17  PARKS AND RECREATION, a state agency

18          Defendant.

19

20

21

22

23

24

25

26  ───────────────────

27  [1]      Waterkeeper Northern California recently changed its name to Baykeeper.  Deltakeeper remains a chapter of
    Baykeeper.
28

    ─────────────────────────────────────────────────────────────────────────────
    Consent Decree; Order                      1                       CIV. S-04-2647 KJM

1  Plaintiff Deltakeeper, a chapter of Baykeeper ("Plaintiff" or "Deltakeeper") and Defendant Ruth

2  Coleman, in her official capacity as Director of California Department of Parks and Recreation

3  ("Defendant" or "State Parks") (collectively, the "Parties") hereby stipulate to the following:

4  **I.      RECITALS**

5  WHEREAS, Baykeeper is a regional non-profit public benefit corporation organized under the

6  laws of the State of California.  Baykeeper's mission is to protect and enhance the water quality of the

7  San Francisco Bay-Delta estuary and its watershed for the benefit of its ecosystems and human

8  communities.  The Deltakeeper Chapter of Baykeeper carries out this mission on the Sacramento – San

9  Joaquin River Delta and its tributaries in California's Great Central Valley;

10  WHEREAS, State Parks is a state agency that owns and operates the Empire Mine State Park

11  ("Empire Mine") in Grass Valley.  Empire Mine is an 805-acre park with inoperative mines and public

12  trails;

13  WHEREAS, on October 14, 2004, Plaintiff provided Defendant, the Administrator and the

14  Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"),

15  and the Executive Director of the California State Water Resources Control Board ("State Board") with

16  a Notice of Violation and Intent to File Suit ("60-Day Notice") under Section 505(a) of the Federal

17  Water Pollution Control Act (the "Clean Water Act" or "Act"), 33 U.S.C. §§ 1365(a)(1) and (f).  The

18  60-Day Notice alleged, and Plaintiff contends, that Defendant has violated and continues to violate the

19  Act, including California's Industrial Storm Water Permit[2] and Construction Storm Water Permit[3];

20  WHEREAS, on October 6, 2005, Plaintiff provided Defendant, the Administrator and the

21  Regional Administrator for EPA, the State Board, and the Director of the California Integrated Waste

22  Management Board with a Supplemental Notice of Violation and Intent to File Suit ("Supplemental 60-

23  Day Notice") under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a)(1) and (f), and Section

[2] National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 97-03-DWQ (hereinafter "Industrial Storm Water Permit").
[3] NPDES General Permit No. CAS000002, State Water Resources Control Board Order No. 99-08-DWQ (hereinafter "Construction Storm Water Permit").

7002(a)(1)(B) of the Resource Conservation and Recovery Act (the "RCRA"), 42 U.S.C. §§ 6901 *et seq.*;

WHEREAS, on December 15, 2004, Plaintiff filed its Complaint in the United States District Court for the Eastern District of California against Defendant (Case No. CIV S-04-2647 KJM), and on January 10, 2006, Plaintiff filed their Amended Complaint;

WHEREAS, the Parties, through their authorized representatives and without either adjudication of the Amended Complaint's claims or admission by Defendant of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement and avoid the costs and uncertainties of further litigation;

WHEREAS, this Court has jurisdiction over the subject matter of the claims asserted by Deltakeeper pursuant to the Clean Water Act Section 505(a), 33 U.S.C. § 1365(a), and 28 U.S.C. §§ 1331, 1355, and 1367, and the RCRA Section 7002, 42 U.S.C. § 6972.  Venue is proper in this judicial district pursuant to Clean Water Act Sections §§ 309(b), 505(c), 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and (c).  The Amended Complaint filed herein states claims for which relief can be granted.  The Parties waive any and all objections that they may have to the Court's jurisdiction to enter and enforce this Consent Decree.

## II.    DEFINITIONS

1)  "BAT" as used herein means Best Available Technology Economically Feasible as understood in Section 301 of the Clean Water Act, 33 U.S.C. § 1311.  BAT indicates the level of pollutant control technology that must be used to control all toxic and non-conventional pollutants.

2)  "BCT" as used herein means Best Conventional Pollutant Control Technology.  BCT indicates the level of pollutant control technology that must be used to control conventional pollutants.

3)  "Best Management Practices" or "BMPs" as used herein refers and relates to schedules of activities, prohibitions of practices, maintenance procedures, and other structural and non-structural management practices to prevent or reduce the pollution of waters of the state and/or the United States.

4)  "Clean Water Act", "Act", or "CWA" as used herein refers to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*

5)  "Construction Activity" or "Construction Activities" as used herein means current or future land disturbing activities of one acre or more and includes but is not limited to clearing, grading, demolition, excavation, construction of new structures, and reconstruction or improvement of existing facilities.

6)  "Magenta Drain" as used herein means and refers to the point of discharge of wastewater, storm water and/or ground water and which is the subject of and referenced in the Report of Waste Discharge submitted by Defendant to the California Central Valley Regional Water Quality Control Board ("Regional Board").

III.   **COMMITMENTS OF DEFENDANT**

1.   The Parties agree that this Consent Decree and all activities undertaken pursuant to this Consent Decree shall be implemented in compliance with all applicable state laws, regulations, orders and permits.

   A.   <u>**Storm Water Discharges Associated with Construction Activities and/or Industrial Activities.**</u>

2.   Receiving Water Limitation C(2) in the Industrial Storm Water Permit requires that State Parks "not cause or contribute to the exceedance of an applicable water quality limit."  Effluent Limitation B(3) of the Industrial Storm Water Permit requires that BMPs be developed and implemented to achieve compliance with the BAT and BCT standard.

3.   Receiving Water Limitation B.2 of the Construction Storm Water Permit requires the development and implementation of BMPs that prohibit discharges from causing or contributing to an exceedance of an applicable water quality standard contained in a Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan. The Construction Storm Water Permit also requires BMPs that will achieve BAT/BCT.  Special Provisions for Construction Activity C(2).

4.   State Parks agrees that it will come into compliance with the requirements of the Construction Storm Water Permit and Industrial Storm Water Permits by February 21, 2006 (referred to as the "Initial Compliance Period").

5.   State Parks agrees that during the Initial Compliance Period State Parks will develop and implement an Industrial Storm Water Permit Storm Water Pollution Prevention Plan ("Industrial

1   SWPPP"), revising and implementing the current Construction Storm Water Permit Storm Water

2   Pollution Prevention Plan ("Construction SWPPP"), and developing and implementing a Monitoring and

3   Reporting Program that incorporate the requirements of this Consent Decree, the Industrial Storm Water

4   Permit and the Construction Storm Water Permit.  The Parties acknowledge they may disagree regarding

5   what constitutes compliance with the Construction and Industrial Storm Water Permits.  Nevertheless,

6   the Parties agree to engage in the dispute resolution process set forth in this Consent Decree to resolve

7   any disputes they may have regarding what constitutes compliance, in lieu of costly and time-consuming

8   litigation.

9          6.        State Parks will submit its Industrial SWPPP, and any other relevant information to

10  Deltakeeper by February 3, 2006.  State Parks will submit the revised Construction SWPPP to

11  Deltakeeper within the Initial Compliance Period.  Deltakeeper agrees to provide State Parks with

12  comments on the current Construction SWPPP by February 3, 2006.  Further, the Parties agree that

13  during the Initial Compliance Period the parties will discuss comments regarding the State Parks'

14  Industrial SWPPP.

15         7.        The parties agree to use an expert consultant to serve as an independent advisor to the

16  Court on all matters pertaining to the implementation of this Consent Decree requiring expert opinion

17  (hereinafter referred to as the "Court Advisor").  The Parties agree that by January 30, 2006,

18  Deltakeeper and State Parks will exchange the names, resumes, references and hourly rates of up to 3

19  experts.  The parties will meet and confer in an attempt to select one expert from the submitted choices.

20  If the Parties cannot agree on the independent Court Advisor then the parties agree to provide Judge

21  Peter A. Nowinski with the names, resumes, references and hourly rates of the proposed Court Advisor

22  by February 6, 2006.  The Court will select one of the candidates.  State Parks agrees to formally retain

23  the services of the Court Advisor within 10 calendar days of the date Judge Mueller signs this Consent

24  Decree.  State Parks agrees to pay the Court Advisor's fees and reasonable attorney's fees and costs as

25  set forth in paragraph 20 but retains the right to assert that the Court should offset payment of attorney's

26  fees if State Parks believes that Deltakeeper has caused the Court Advisor to incur unreasonable fees.

27         8.        The Parties agree that storm water samples will be collected during the first storm event

28  after the Initial Compliance Period even if the Court Advisor is not yet formally retained by State Parks.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Within 5 days of the Parties' receipt of any storm water sample results, if the Court Advisor has already been formally retained by State Parks, the Parties and the Court Advisor will conduct a telephonic conference to discuss State Parks' compliance with the Construction Storm Water Permit and the Industrial Storm Water Permit, the sample results, and the applicability of numeric standards to those sample results.  If the Court Advisor has not been retained prior to the receipt of any storm water samples, then within 5 days of the date on which the Court Advisor is formally retained, the Parties and the Court Advisor will conduct a telephonic conference to discuss the State Parks' compliance with the Construction Storm Water Permit and the Industrial Storm Water Permit, the sample results, and the applicability of numeric standards to those sample results.  This meet and confer process shall be at least 14 days before any party may invoke formal dispute resolution pursuant to paragraph 25.  If the Parties agree that compliance has been achieved, either party shall confirm the agreement in writing with a statement that the meet and confer process is terminated ("Notice of Agreement").  If the Parties cannot come to an agreement as to compliance within 14 days and/or whether numeric standards apply and if so what standards should apply to the discharge, then either party shall notify the other that the meet and confer process over the dispute is terminated.  Either party may initiate the formal dispute resolution procedure set forth in paragraph 25.  Formal dispute resolution shall be initiated by sending notice to the other party within 7 days of the date the meet and confer process was terminated.  If such notice is not sent, the Parties waive their rights to seek formal dispute resolution.

**B.      Discharges from the Magenta Drain and Hazardous Substances at Empire Mine.**

9.      State Parks agrees to comply with its NPDES permit regulating discharges from the Magenta Drain.  State Parks expects that by June 30, 2006, the Regional Board staff will present a draft NPDES permit to the Regional Board for decision.

10.      State Parks agrees that by June 30, 2006, it will have spent $ 260,000.00 for the work described in the contract with Kellco Services, Inc.  State Parks has applied for $5,000,000.00 in the 2006/2007 state budget and if approved   will use those funds for the purposes set forth by the Legislature in the State Budget.  State Parks agrees that if the funds requested as of the Effective Date of this Consent Decree are insufficient to clean up and remediate the wastes at Empire Mine, then State Parks will seek additional funding from the state budget.

11.     Until State Parks obtains its NPDES permit for the discharge from Magenta Drain, State Parks agrees that after the Initial Compliance Period it will engage in good faith discussions with Deltakeeper regarding interim measures to use at the Magenta Drain discharge point for treating, reducing, and/or eliminating the pollutants in the water discharged from the Magenta Drain.  If State Parks and Deltakeeper cannot agree on interim measures, then the parties agree to utilize the retained Court Advisor in an effort to resolve the dispute.  If State Parks and Deltakeeper reach agreement on an interim measure, then State Parks agrees to implement the measure agreed upon.  Either party shall provide the other with a Notice of Agreement.  If the Parties cannot reach agreement with the assistance of the Court Advisor within 15 days of the date the meet and confer process with the Court Advisor commenced, then either party shall notify the other that the meet and confer process for the dispute is terminated.  Either party may initiate the formal dispute resolution procedure set forth in paragraph 25. Formal dispute resolution must be initiated by sending notice to the other party within 7 days of the date the meet and confer process was terminated.  If such notice is not sent, the Parties waive their rights to seek formal dispute resolution.

12.     State Parks agrees that it will conduct all removal and remedial actions required by the Department of Toxic Substances Control ("DTSC") and/or the Regional Board to address hazardous substances at Empire Mine.  State Parks will provide Deltakeeper with its agreement with, or final order issued by, DTSC and/or the Regional Board within 7 days of its effective date.  The Parties agree that Deltakeeper can monitor the progress that State Parks makes at Empire Mine respecting said removal and remedial actions.  If a dispute about the clean up, remediation or progress at Empire Mine occurs the parties agree to engage in the dispute resolution procedures as set forth in paragraphs 23 - 27.

13.     State Parks agrees to post a sign(s) informing the public of the hazardous nature of the Magenta Drain discharge and the waters receiving the discharge.  The sign(s) shall be posted at the Portal where the discharge from the Magenta Drain occurs and State Parks agrees to make best efforts to post sign(s) downstream of the discharge point in Memorial Park if on land not owned by the State of California.

//

//

---

Consent Decree; Order                                        7                                        CIV. S-04-2647 KJM

**C.**      **Reporting & Monitoring**

14.      Reporting.  During the life of this Consent Decree, on a monthly basis, State Parks shall provide Deltakeeper with a copy of all final compliance and monitoring data, including, but not limited to, inspection reports, and Annual Reports related to Empire Mine, generated during the prior month. During the life of this Consent Decree, State Parks shall provide Deltakeeper with all laboratory analyses within seven (7) days of State Parks' receipt of such information.

15.      Document Provision.  During the life of this Consent Decree, State Parks shall copy Deltakeeper on all documents provided to the Regional Board and/or to DTSC as required by any applicable NPDES permit, orders, or agreements.

16.      Site Inspections.  For the term of this Consent Decree, Deltakeeper, its legal counsel and/or other Deltakeeper representative, may conduct up to three (3) yearly site inspections at Empire Mine ("Site Inspections").  Deltakeeper will contact the Court Advisor and make best efforts to conduct the Site Inspection with State Parks and the Court Advisor.  If Deltakeeper is unable to coordinate the Site Inspection with the Court Advisor then Deltakeeper shall provide State Parks with forty-eight (48) hours notice prior to each dry weather inspection and twenty-four (24) hours notice prior to each wet weather inspection.  During the Site Inspections, Deltakeeper and its representatives shall be allowed access to the SWPPP and monitoring records and to all monitoring reports and data for Empire Mine. During the Site Inspection, Deltakeeper or its representatives may collect split samples, whenever possible, of storm water discharges if Deltakeeper has reason to believe that State Parks is not implementing adequate BMPs or is otherwise not in compliance with the Industrial Storm Water Permit, the Construction Storm Water Permit, or the adopted NPDES permit for the discharge from Magenta Drain because State Parks has failed to adequately collect and/or analyze samples as required by the permits.  A certified California laboratory shall analyze storm water samples collected by Deltakeeper.

**IV.**      **COMMITMENTS OF PLAINTIFF**

17.      Stipulated Dismissal and Consent Decree.  Within 2 days of the Effective Date of this Consent Decree, Plaintiff shall file this Stipulated Dismissal and Consent Decree with the Court.

18.      Review by Federal Agencies.  Plaintiff shall submit this Consent Decree to EPA and the U.S. Department of Justice ("DOJ") within 2 days of the Effective Date of this Consent Decree for

1  review consistent with 40 C.F.R. § 135.5.  The review period expires forty-five 45 days after receipt by

2  both agencies, as evidenced by the certified return receipts, copies of which shall be provided to State

3  Parks upon request.  In the event that EPA or DOJ comments negatively on the provisions of this

4  Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or

5  DOJ.

6  **V.      FEES, COSTS AND EXPENSES**

7          19.      <u>Fees Incurred as of the Effective Date of this Decree.</u>  To help defray Plaintiff's

8  attorneys', consultant, and expert fees and costs, and any other costs incurred as a result of investigating,

9  bringing this matter to State Parks' attention, and negotiating a settlement, State Parks shall pay Plaintiff

10  the sum of $205,000.00.  Payment shall be made within 120 days of receiving notice by Plaintiff of the

11  filing of the Stipulated Dismissal.  Payment shall be made to Plaintiff's counsel in the form of a single

12  check payable to "Lawyers for Clean Water Attorney Client Trust Account" addressed to 1004 O'Reilly

13  Avenue, San Francisco, CA 94129 and shall constitute full payment for all costs of litigation incurred by

14  Plaintiff that have or could have been claimed in connection with or arising out of Plaintiff's lawsuit, up

15  to and including the Effective Date.

16          20.      <u>Fees Incurred after the Effective Date of this Decree.</u>  State Parks agrees to pay

17  Deltakeeper's reasonable attorneys fees and other litigation costs incurred after the Effective Date of this

18  Consent Decree for the work contemplated in paragraphs 4 - 11 until either the date of the Notice of

19  Agreement or the date formal dispute resolution has been complete through settlement or court

20  determination.  For work performed after these dates, State Parks agrees to pay Deltakeeper's reasonable

21  fees and litigation costs up to and including $20,000.00.  Deltakeeper agrees to provide State Parks with

22  proper documentation as to the fees and costs incurred.  State Parks agrees to submit payment within 30

23  days of receiving the documentation from Deltakeeper.

24  **VI.     TERMINATION OF CONSENT DECREE**

25          21.      The Parties agree to meet and confer on or before June 1, 2008 to discuss whether the

26  Consent Decree can be terminated if it is still in effect.

27  //

28  //

---

Consent Decree; Order                                        9                                        CIV. S-04-2647 KJM

## VII.   BREACH OF CONSENT DECREE

22.   <u>Force Majeure</u>.  Defendant shall notify Plaintiff pursuant to the terms of this paragraph, where implementation of the steps set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts of Defendant or any of them, due to circumstances beyond the control of Defendant or their agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by the Defendant. Circumstances beyond the defendants control include, but are not limited to, delays or changed conditions occasioned by changes to statutory, regulatory, or other applicable state or federal law. Delays due to unanticipated or increased costs or expenses associated with the completion of any work or activity under this Consent Decree, changed financial circumstances, or the Defendant's failure to make timely and bona fide applications and to exercise diligent efforts to obtain permits, or normal inclement weather shall not, in any event, be considered to be circumstances beyond the Defendant's control.

a.   Defendant claiming impossibility shall notify Plaintiff in writing within ten (10) days of the date that the Defendant first knew of the event or circumstance or should have known of the event or circumstance by the exercise of due diligence and shall describe the reason for the non-performance.  The Defendant's notice shall specifically refer to this Part of the Consent Decree and describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by the Defendant to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance.  Defendant shall adopt all reasonable measures to avoid and minimize such delays.

b.   The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that the non-performance was or is impossible, despite the timely good faith efforts of Defendant, due to circumstances beyond the control of Defendant, that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant, new performance deadlines shall be established.

c.   If Plaintiff disagrees with Defendant's notice, or in the event that the Parties cannot timely agree on the terms of such a stipulation, either party shall have the right to invoke the

1 dispute resolution procedures described herein.  In such proceeding, the Defendant shall bear the burden

2 of proving that any delay of any requirement of this Consent Decree was caused or will be caused by

3 Force Majeure and the extent of any delay attributable to such circumstances.

4 **VIII.   DISPUTE RESOLUTION PROCEDURES**

5       23.      Except as otherwise set forth in paragraphs 7, 8 and 11, the dispute-resolution procedure

6 set forth in this Section shall be the exclusive mechanism for resolving disputes between the Parties with

7 regard to any aspect of this Consent Decree.  The Parties may not initiate the formal dispute-resolution

8 procedure set forth in paragraph 25 until after Judge Mueller has signed this Consent Decree.

9       24.      For any disputes other than disputes addressed in paragraphs 7, 8 and 11, the Parties

10 agree to engage in informal dispute resolution pursuant to the terms of this paragraph:

11         a.      <u>Meet and Confer</u>.  If a dispute under this Consent Decree arises, or any party

12 believes that a breach of this Consent Decree has occurred, the Parties shall meet and confer within five

13 (5) days of receiving written notification of a request for such meeting.  During the meet and confer

14 proceeding, the Parties shall discuss the dispute and make best efforts to devise a mutually agreed upon

15 plan, including implementation dates, to resolve the dispute.

16         b.      If either party fails to meet and confer or the meet and confer does not resolve the

17 dispute, after at least ten (10) days have passed after the meet and confer occurred or should have

18 occurred, either party shall be entitled to initiate the formal dispute resolution procedures in paragraph

19 25.

20       25.      <u>Formal Dispute Resolution</u>.  If  any meet and confer process provided for in this Consent

21 Decree has been terminated and the Parties' disputes have not been resolved,  the Parties agree that their

22 exclusive recourse is to file concurrent briefs before Judge Mueller, to determine whether either party is

23 in breach of this Consent Decree and, if so, to require the breaching party to remedy any breach

24 identified by the District Court within a reasonable time frame.  The parties will stipulate to an expedited

25 hearing schedule.  Within 3 days of receiving one party's notice to invoke formal dispute resolution the

26 Parties agree to call the court clerk to schedule a hearing date that gives the parties at least 14 days to

27 file their concurrent briefing before the court conducts the hearing.  The Court may consider any and all

28 evidence, including, but not limited to, the position of the permitting authority, the Regional Board,

1    DTSC or other state agency.  The party initiating the dispute resolution procedures identified in this

2    paragraph may request an expedited hearing schedule, and the non-initiating party shall join in any such

3    request.  If Judge Mueller is not available to perform the role identified herein, the Parties agree that the

4    dispute resolution process shall be re-assigned pursuant to applicable rules of the District Court.

5          26.    Court Ordered Sanctions.  Nothing in this Consent Decree precludes either party from

6    seeking sanctions from the court for non-compliance with a Court order issued following formal dispute

7    resolution.  Nothing in this Consent Decree shall be construed as an agreement by the Parties that

8    sanctions are appropriate or authorized by law.  The Parties reserve their rights to take the position that

9    sanctions are not appropriate or authorized by law.

10         27.    Fees for Disputes Presented to the Court.  If Plaintiff is the prevailing or substantially

11   prevailing party in a motion before this Court then State Parks agrees to pay Plaintiff's reasonable costs

12   and attorneys' fees incurred during the meet and confer and formal dispute resolution processes

13   consistent with Section 1365 of the Clean Water Act.

14   **IX.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

15         28.    In consideration of the above, upon the Effective Date of this Consent Decree, the Parties

16   hereby fully release, except for claims for the Defendant's failure to comply with this Consent Decree,

17   each other and their respective successors, assigns, officers, agents, employees, and all persons, firms

18   and corporations having an interest in them, from any and all alleged Clean Water Act violations and/or

19   RCRA violations that have or could have been claimed in the Amended Complaint, known or unknown,

20   up to and including the Effective Date of this Consent Decree.

21         29.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or

22   take any position that it deems necessary or appropriate in any formal or informal proceeding before the

23   Regional Board, EPA, or any other judicial or administrative body on any other matter relating to

24   Defendant.

25   **X.    MISCELLANEOUS AND GENERAL PROVISIONS**

26         30.    Neither the Consent Decree nor any payment pursuant to the Consent Decree shall

27   constitute or be construed as a finding, adjudication, or acknowledgment of any fact, law, or liability,

28

Consent Decree; Order                           12                              CIV. S-04-2647 KJM

1  nor shall it be construed as an admission of violation of any law, rule, or regulation.  Defendant

2  maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

3      31.     The Court shall retain jurisdiction to enforce the terms and conditions of this Consent

4  Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction

5  or execution of the Consent Decree up to and including the date of termination.

6      32.     Construction.  The language in all parts of this Consent Decree shall be construed in

7  accordance with the law and according to its plain and ordinary meaning, except as to those terms

8  defined in the applicable NPDES Permits, Clean Water Act, Resource Conservation and Recovery Act,

9  or specifically herein.

10      33.     Choice of Law.  The laws of the State of California and the United States shall govern

11  this Consent Decree.

12      34.     Severability.  In the event that any provision, paragraph, section, or sentence of this

13  Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions shall

14  not be adversely affected.

15      35.     Correspondence.  All notices required herein or any other correspondence pertaining to

16  this Consent Decree shall be sent by regular, certified, or overnight mail as follows:

17      If to Plaintiff:

18
19      Layne Friedrich
       Lawyers for Clean Water, Inc.
20      1004 O'Reilly Ave.
       San Francisco, CA 94129

21      With copies to:

22
23      Carrie McNeil
       Deltakeeper Chapter
24      445 Weber Avenue, Suite 137B
       Stockton, CA 95203

25  //

26  //

27  //

28

1    <u>If to Defendant:</u>

2    Denise Ferkich Hoffman
3    Bruce Reeves
     Deputy Attorneys General
4    Office of the Attorney General
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6
7    With copies to:

8    Kathryn J. Tobias, Senior Staff Counsel
     Department of Parks and Recreation
9    1416 9th Street, 14 th Floor
     Sacramento CA 95814
10

11       Notifications of communications shall be deemed submitted three (3) days after the date that they

12   are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any

13   change of address or addresses shall be communicated in the manner described above for giving notices.

14   In addition, the Parties may agree to transmit documents electronically or by facsimile.

15       36.    <u>Effect of Consent Decree</u>.  Plaintiff does not, by its consent to this Consent Decree,

16   warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute

17   or result in compliance with any federal or state law or regulation.  Nothing in this Consent Decree shall

18   be construed to affect or limit in any way the obligation of the Defendant to comply with all federal,

19   state, and local laws and regulations governing any activity required by this Consent Decree.

20       37.    <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all

21   of which together shall constitute one original document.  Telecopy and/or facsimile copies of original

22   signature shall be deemed to be originally executed counterparts of this Consent Decree.

23       38.    <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein,

24   may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the

25   Parties.

26       39.    <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this

27   matter.

28

40.    Integration Clause.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

41.    Authority.  The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

42.    The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

43.    The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

44.    The term "Effective Date," as used in this Consent Decree, shall mean the last date on which the signature of a party to this Consent Decree is executed.

The Parties hereby stipulate and enter into this Consent Decree.

Date: January 27, 2006

/s/ Carrie McNeil
By:    Carrie McNeil, Deltakeeper
        (as authorized on January 27, 2006)

Date: January 27, 2006

/s/ Ruth Coleman
By:    Ruth Coleman in her official capacity as
        Director, State Parks
        (as authorized on January 27, 2006)

**APPROVED AS TO FORM**:             For DEFENDANT:

/s/ Denise Ferkich Hoffman
By:    Denise Ferkich Hoffman
        (as authorized on January 27, 2006)
        Deputy Attorney General
        Attorney for Defendant

/s/ Bruce Reeves

By:     Bruce Reeves
        (as authorized on January 27, 2006)
        Deputy Attorney General
        Attorney for Defendant

For PLAINTIFF:

/s/ Layne Friedrich

By:     Layne Friedrich
        (as authorized on January 27, 2006)
        Lawyers For Clean Water, Inc.
        Attorney for Plaintiff

ORDER

Based on the above stipulation of the parties, IT IS HEREBY ORDERED that the above captioned action is dismissed with prejudice.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over this matter for the purpose of enforcing compliance by the parties with the terms of the Consent Decree.

DATED:  March 10, 2006.

_____

UNITED STATES MAGISTRATE JUDGE

---

Consent Decree; Order                                   16                                   CIV. S-04-2647 KJM